No. 15-4235

# In The United States Court Of Appeals For The Fourth Circuit

—————————

UNITED STATES OF AMERICA,

Appellee,

v.

EDGAR JAVIER BELLO MURILLO, a/k/a Payaso,

Defendant-Appellant.

—————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA, NO. 1:13-CR-310
(HON. GERALD BRUCE LEE, DISTRICT JUDGE)

—————————

## AMENDED BRIEF FOR THE UNITED STATES

—————————

DANA J. BOENTE
United States Attorney
Eastern District of Virginia

RICHARD COOKE
Assistant United States Attorney
Eastern District of Virginia

STACEY K. LUCK
Human Rights & Special
    Prosecutions Section
U.S. Department of Justice

LESLIE R. CALDWELL
Assistant Attorney General

SUNG-HEE SUH
Deputy Assistant Attorney General

ROSS B. GOLDMAN
Criminal Division, Appellate Section
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 532-4153
Ross.Goldman@usdoj.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................i

TABLE OF AUTHORITIES ..............................................................iii

JURISDICTIONAL STATEMENT .......................................................1

ISSUES PRESENTED AND RULINGS UNDER REVIEW .......................2

STATEMENT OF THE CASE ............................................................2

    A.    Procedural History ...............................................................2

    B.    Facts .................................................................................3

    C.    The district court denies Bello's motion to dismiss the indictment on due process grounds. ........................................5

SUMMARY OF ARGUMENT............................................................6

ARGUMENT ................................................................................8

I.   Bello's Prosecution Satisfies The Due Process Clause................8

    A.    Standard of Review...............................................................8

    B.    Bello's prosecution in the United States satisfies due process.............8

        1.    Bello's crime affects substantial United States interests, and Bello must have known that he would be subject to prosecution somewhere for conspiring to kidnap, and murdering, Special Agent Watson. ....................................8

        2.    Bello's prosecution comports with international law. ...................21

II.  Bello's Argument That 18 U.S.C. § 1116(a) And 18 U.S.C. § 1201(a)(4) Require Proof Of Knowledge That Special Agent Watson Was An Internationally Protected Person Is Barred By The Appeal Waiver And Lacks Merit In Any Event. ........................................................25

    A.    Standard of Review...............................................................25

    B.    The appeal waiver bars Bello's statutory interpretation argument.............................................................................26

C.    In any event, Bello's argument fails on the merits because the government was not required to prove his knowledge of the jurisdictional element that his victim was an IPP. ...............................28

CONCLUSION ...................................................................................................36

CERTIFICATE OF SERVICE.............................................................................37

STATEMENT REGARDING ORAL ARGUMENT...................................................38

CERTIFICATE OF COMPLIANCE......................................................................39

# TABLE OF AUTHORITIES

## Federal Cases

*Alleyne v. United States*, 133 S. Ct. 2151 (2013) ....................................................27

*Asahi Metal Indus. v. Superior Court of Cal.*, 480 U.S. 102 (1987) ........................15

*Chatwin v. United States*, 326 U.S. 455, 460 (1946) ...............................................34

*Hentosh v. Old Dominion Univ.*, 767 F.3d 413 (4th Cir. 2014) ...............................17

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ..................................................15

*Matter of Extradition of Manzi*, 888 F.2d 204 (1st Cir. 1989) ................................12

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) .............................33

*Staples v. United States*, 511 U.S. 600 (1994) .................................................. 34, 35

*United States v. Al Kassar*, 660 F.3d 108 (2d Cir. 2011) ................................ 10, 11, 14, 15

*United States v. Ali*, 718 F.3d 929 (D.C. Cir. 2013) ......................................11, 15, 20

*United States v. Alomia-Riascos*, 825 F.2d 769 (4th Cir. 1987) ........................ 21, 22

*United States v. Archie*, 771 F.3d 217 (4th Cir. 2014) .............................................27

*United States v. Ashford*, 718 F.3d 377 (4th Cir. 2013) ...........................................34

*United States v. Ayesh*, 702 F.3d 162 (4th Cir. 2012) ..............................................21

*United States v. Ballestas*, 795 F.3d 138 (D.C. Cir. 2015) .................................... 8, 9

*United States v. Benitez*, 741 F.2d 1312 (11th Cir. 1984) ........................................23

*United States v. Birch*, 470 F.2d 808 (4th Cir. 1972) ...............................................22

*United States v. Brehm*, 691 F.3d 547 (4th Cir. 2012) ................5, 6, 8, 9, 10, 11, 13, 16, 21

*United States v. Caicedo*, 47 F.3d 370 (9th Cir. 1995) .............................................17

*United States v. Cardales*, 168 F.3d 548 (1st Cir. 1999) ...............................................9, 22, 23

*United States v. Carvajal*, 924 F. Supp. 2d 219 (D.D.C. 2013).....................................14

*United States v. Clark*, 435 F.3d 1100 (9th Cir. 2006) ........................................24

*United States v. Cooper*, 482 F.3d 658 (4th Cir. 2007) .............................................29, 30, 32

*United States v. Copeland*, 707 F.3d 522 (4th Cir. 2013)........................................ 26, 27

*United States v. Davis*, 905 F.2d 245 (9th Cir. 1990) ...........................................16, 23

*United States v. Feola*, 420 U.S. 671 (1975)............................................... 12, 30, 31, 32

*United States v. Freed*, 401 U.S. 601 (1971)..........................................................35

*United States v. Garcia*, 182 Fed. Appx. 873 (11th Cir. May 16, 2006) .............................22

*United States v. Gonzalez*, 776 F.2d 931 (11th Cir. 1985) ...................................22

*United States v. Hamidullin*, ____ F. Supp. 3d. _____,
   2015 WL 4241397 (E.D. Va. 2015) .......................................................14

*United States v. Howard-Arias*, 679 F.2d 363 (4th Cir. 1982) .............................................23

*United States v. Ibarguen-Mosquera*, 634 F.3d 1370 (11th Cir. 2011) .....................................9

*United States v. Ide*, 624 F.3d 666 (4th Cir. 2010) .................................................25

*United States v. Langley*, 62 F.3d 602 (4th Cir. 1995) .................................................30

*United States v. Layton*, 509 F. Supp. 212 (N.D. Cal. 1981)...................................31

*United States v. Lewis*, 662 F.2d 1087 (4th Cir. 1981) ...........................................29

*United States v. Klimavicius-Viloria*, 144 F.3d 1249 (9th Cir. 1998) .................................17

*United States v. Mohammad-Omar*, 323 Fed. Appx. 259 (4th Cir. 2009) ...............14, 16, 17

*United States v. Mostafa*, 965 F. Supp. 2d 451 (S.D.N.Y. 2013) ...........................................17

iv

*United States v. Passaro*, 577 F.3d 207 (4th Cir. 2009) ....................................29

*United States v. Perez-Oviedo*, 281 F.3d 400 (3d Cir. 2002) ...........................15

*United States v. Perlaza*, 439 F.3d 1149 (9th Cir. 2006) ...............................17

*United States v. Peterson*, 812 F.2d 486 (9th Cir. 1987) ...............................23

*United States v. Pizzarusso*, 388 F.2d 8 (2d Cir. 1968) ................................22

*United States v. Sandoval*, 347 F.3d 627 (7th Cir. 2003) ..............................34

*United States v. Sepulveda*, 57 F. Supp. 3d 610 (E.D. Va. 2014) ..... 2, 26, 39, 30, 31, 32, 35

*United States v. Shi*, 525 F.3d 709 (9th Cir. 2008) ........................................20

*United States v. Thornsbury*, 670 F.3d 532 (4th Cir. 2012) ...........................25

*United States v. Tinoco*, 304 F.3d 1088 (11th Cir. 2002) ..............................23

*United States v. Vasquez-Velasco*, 15 F.3d 833 (9th Cir. 1994) .....................23

*United States v. Yermian*, 468 U.S. 63 (1984) ...............................29, 30, 35

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003) .............................14, 16, 18

*United States v. Yousef*, 2010 WL 3377499 (S.D.N.Y. Aug. 23, 2010) (unpublished) ......15

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ..........................15

## Federal Statutes and Rules

18 U.S.C. § 2 ...........................................................................................................2

18 U.S.C. § 111 ...........................................................................................12, 30, 33

18 U.S.C. § 922 .....................................................................................................30

18 U.S.C. § 1001 ...................................................................................................30

18 U.S.C. § 1114 ..................................................................................................2

18 U.S.C. § 1116 .............................................................................................passim

18 U.S.C. § 1201 .............................................................................................passim

18 U.S.C. § 2423 ................................................................................................24

18 U.S.C. § 3231 ..................................................................................................1

26 U.S.C. § 5861 ................................................................................................34

28 U.S.C. § 1291 ..................................................................................................1

## Other Authorities

2–41 Modern Federal Jury Instructions — Criminal.........................................30

H.R. Rep. No. 94-1614 (1976).........................................................................32

H.R. Rep. No. 104-383 (1995)..........................................................................32

Restatement (Third) of Foreign Relations Law § 402 .....................................22

Restatement (Third) of Foreign Relations Law § 403 .................................23, 24

S. Rep. No. 92-1105 (1972)..............................................................................31

Wayne R. LaFave, 3 Substantive Criminal Law § 18.2(a) (2d ed. 2003) .........29

No. 15-4235

In The United States Court Of Appeals
For The Fourth Circuit

————————————

UNITED STATES OF AMERICA,

Appellee,

v.

EDGAR JAVIER BELLO MURILLO, a/k/a Payaso,

Defendant-Appellant.

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

————————————

**AMENDED BRIEF FOR THE UNITED STATES**

————————————

**JURISDICTIONAL STATEMENT**

Defendant-appellant Edgar Javier Bello Murillo (Bello) appeals his judgment of conviction in a criminal case. The district court (Lee, J.) entered judgment on April 16, 2015, and Bello filed a timely notice of appeal on April 21, 2015. JA 199–205.[1] The district court had jurisdiction under 18 U.S.C. § 3231. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

——————————————

[1] "JA" refers to the Joint Appendix; "Br." refers to Bello's opening brief; and "Add." refers to the Addendum to Bello's brief.

## ISSUES PRESENTED AND RULINGS UNDER REVIEW

1.    Whether the Fifth Amendment's Due Process Clause allows the United States to prosecute Bello, a Colombian citizen, for conspiring to kidnap, and murdering, a victim in Colombia who turned out to be a United States Assistant Attaché working for the United States government in Colombia.  *See* JA 109A, 167–75A.

2.    Whether Bello's argument that the crimes to which he pleaded guilty — murder of an internationally protected person, in violation of 18 U.S.C. § 1116(a), and conspiring to kidnap an internationally protected person, in violation of 18 U.S.C. § 1201(a)(4), (c) — require proof of knowledge that his victim was an internationally protected person is barred by the appeal waiver provision in his plea agreement and, if it is not, whether the district court properly rejected Bello's argument on the merits, *see United States v. Sepulveda*, 57 F. Supp. 3d 610 (E.D. Va. 2014); *see also* JA 109A, 175A.

## STATEMENT OF THE CASE

A.    <u>Procedural History</u>

On July 18, 2013, a federal grand jury returned a multi-defendant, multi-count indictment charging Bello with second-degree murder of an internationally protected person (IPP), in violation of 18 U.S.C. § 1116(a), (c) and 18 U.S.C. § 2; second-degree murder of an officer or employee of the United States, in violation of 18 U.S.C. § 1114 and 18 U.S.C. § 2; conspiracy to kidnap an IPP and official and employee of the United States, in violation of 18 U.S.C. § 1201(c); and kidnapping an IPP and official and employee of the United States, in violation of 18 U.S.C. § 1201(a), (d) and 18 U.S.C.

2

§ 2.  JA 44–55.  Colombia subsequently extradited Bello to the United States to face charges on the three counts related to the victim's status as an IPP.  *See* Order Denying Mot. to Vacate Extradition at 1 (Doc. No. 178); Colombian Gov't Order of Extradition at 4–5 (Doc. No. 292-1).

In September 2014, one of Bello's codefendants moved to dismiss the indictment "for violation of the notice requirement of the Fifth Amendment Due Process Clause."  JA 56–69.  Bello adopted the motion, which the district court denied in November 2014.  JA 109A, 167–75A.[2]

In December 2014, Bello entered a conditional guilty plea, pursuant to a plea agreement, to second-degree murder of an IPP and conspiracy to kidnap an IPP.  JA 176–98; *see also* Minute Entry at 1 (Doc. No. 256).  The plea agreement contained an appeal waiver provision and a reservation of rights allowing Bello to appeal the district court's adverse due process decision.  JA 181–82.  On April 13, 2015, the district court sentenced Bello to 440 months of imprisonment, to be followed by five years of supervised release.  JA 199–201.

B.    Facts[3]

Bello and his coconspirators, cab drivers in Bogotá, Colombia, carried out a series of robberies known as "millionaire's rides."   JA 194.  The robberies were not

---

[2] For convenience, we will refer to the due process motion as Bello's.

[3] The facts are drawn from the Statement of Facts filed with the plea agreement.  *See* JA 178, 192–98.

3

complicated: A coconspirator would pick up a wealthy-looking passenger and signal his confederates, some of whom would then enter the cab and, with the use of weapons (*e.g.*, knives, tasers, and chemical sprays), rob the victim of his valuables. JA 194–95. Before the robbery at issue in this case, Bello had participated in approximately twelve others. JA 194; *see also* Bello Position on Sentencing at 3 (Doc. No. 315). His prior victims were citizens of Colombia, El Salvador, and — in one instance — the United States. JA 194.

On the evening of June 20, 2013, Bello and his coconspirators set out in search of wealthy-looking fares to victimize. JA 195–96. A coconspirator spotted a victim, thought he would be a good candidate for a "millionaire's ride," and picked him up. JA 196. Shortly thereafter, upon seeing the signal, Bello and another coconspirator entered the back of the cab. JA 196. The coconspirator used a taser on the victim; Bello stabbed the victim with a knife at least four times. JA 196. During the struggle, Bello heard the victim yell "No!" in what Bello believed was an American accent. JA 197. The victim, having lost too much blood from his stab wounds, died from his injuries. JA 196.

As it turned out, the victim was James "Terry" Watson, a Special Agent with the United States Drug Enforcement Administration and an Assistant Attaché working for the United States government in Colombia. JA 192–94. As an Assistant Attaché, Special Agent Watson was subject to special protections afforded to IPPs. JA 194; *see also* 18 U.S.C. § 1116(b)(4)(B) (defining IPP to include "any … representative, officer, employee, or agent of the United States Government … who at the time and place

4

concerned is entitled pursuant to international law to special protection against attack upon his person … ."); Br. 4 (acknowledging that Special Agent Watson was an IPP). Bello was subsequently extradited to the United States to face charges arising out of the kidnapping and murder of Special Agent Watson.

C.   The district court denies Bello's motion to dismiss the indictment on due process grounds.

Before trial, Bello moved to dismiss the indictment, arguing that, "on the particular allegations of this case — where the alleged conduct would not have allowed the defendants to foresee that their conduct would subject them to a foreign nation's criminal justice system — the United States cannot, consistent with the requirements of the Due Process Clause of the Fifth Amendment, try them in the Unites States." JA 56.  Among other things, Bello argued that his conduct lacked "sufficient intentional contacts with the United States such that he may fairly be tried in a United States Court" and that he did not intend to harm a United States citizen or government interest.  JA 58, 60–61.

After hearing argument, the district court denied the motion.  JA 110–31, 167–75.  First, the court held, in a ruling not challenged on appeal, that Sections 1116 and 1201 apply extraterritorially.  JA 168–69; *see also* 18 U.S.C. § 1116(c); 18 U.S.C. § 1201(e). Second, and as relevant here, the court held that, under *United States v. Brehm*, 691 F.3d 547 (4th Cir. 2012), prosecuting Bello in the United States did not violate the Due Process Clause.  JA 169–75.  That due process holding itself had two parts.  First, the

court concluded that "it is clear that [Bello's] crime affected the significant American interest of protecting United States citizens who serve their country by working abroad in diplomatic capacities." JA 172. Second, the court determined, quoting *Brehm*, that due process does not require that Bello "understand that he [wa]s subject to prosecution 'in the United States so long as [he] would reasonably understand that [his] *conduct was criminal and would subject [him] to prosecution somewhere*'" and that, given the nature of Bello's violent crimes, he "had ample reason to anticipate being [brought] into a court for allegedly committing a criminal offense." JA 173–74 (quoting *Brehm*, 691 F.3d at 554) (emphasis district court's).

Bello subsequently entered his conditional guilty plea, *see infra* at 26–28, and this appeal followed.

## SUMMARY OF ARGUMENT

1. Bello's prosecution in the United States satisfies the Fifth Amendment's Due Process Clause. Due process in this context requires only that Bello's prosecution be nonarbitrary and fair. Bello's prosecution is both. Because his victim was a United States Assistant Attaché serving the United States' interests in Colombia, it is entirely reasonable that Bello be prosecuted here, as the United States has obvious and weighty interests in ensuring the safety of its diplomatic agents overseas and in prosecuting those who do them harm. Bello's prosecution is also fair. As this Court has made clear, the fairness inquiry requires only that Bello reasonably expect that he could be prosecuted somewhere; due process does not require the further step, advanced by

6

Bello, that he expect to be prosecuted here. And given the violent nature of his crimes, Bello could have plainly anticipated prosecution.

Moreover, Bello's prosecution fits comfortably within the "protective principle" of international law, which recognizes a State's jurisdiction to prosecute noncitizen defendants for committing crimes overseas when those crimes threaten the national interests of the prosecuting State or interfere with the prosecuting State's government operations. And as courts have correctly held, a prosecution that satisfies international law also satisfies due process.

2.     Bello's statutory argument that 18 U.S.C. § 1116(a) and 18 U.S.C. § 1201(a)(4) require proof of knowledge that his victim was an IPP is barred by the appeal waiver provision of his plea agreement. Bello knowingly, intelligently, and voluntarily waived his right to appeal his convictions or sentence, although he reserved his right to appeal the district court's adverse due process decision. Because Bello's nonconstitutional argument falls within the scope of his valid appeal waiver, it is barred, and that part of his appeal should be dismissed.

In any event, as the district court properly concluded, Bello's argument fails on the merits. The victim's status as an IPP under Sections 1116 and 1201 is a jurisdictional element. And the statutes' plain language and legislative history make clear that no mens rea applies to the victim's status as an IPP. This case therefore fits comfortably within the long line of well-established precedent holding that jurisdictional elements are typically not subject to any mens rea requirement.

7

## ARGUMENT

### I. Bello's Prosecution Satisfies The Due Process Clause.

Bello argues (Br. 6–24) that prosecuting him in the United States violates his due process rights because he had no notice, at the time he committed his violent crimes, that he would be subject to criminal prosecution in the United States. Bello's argument misconstrues the due process inquiry and misreads this Court's precedent. As explained below, Bello's prosecution in the United States comfortably satisfies due process.

#### A.  Standard of Review

On appeal of the denial of a motion to dismiss an indictment, this Court reviews the district court's legal analysis de novo and its factual findings for clear error. *United States v. Brehm*, 691 F.3d 547, 550 (4th Cir. 2012).

#### B.  Bello's prosecution in the United States satisfies due process.

##### 1.  *Bello's crime affects substantial United States interests, and Bello must have known that he would be subject to prosecution somewhere for conspiring to kidnap, and murdering, Special Agent Watson.*

a. In *Brehm*, this Court explained that the extraterritorial enforcement of a federal criminal statute "in a particular instance must comport with due process." 691 F.3d at 552. Due process is satisfied if it is neither arbitrary nor unfair to prosecute the defendant in the United States. *Id.* at 552–54; *see also, e.g.*, *United States v. Ballestas*, 795

F.3d 138, 148 (D.C. Cir. 2015);[4] *United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1378 (11th Cir. 2011); *United States v. Cardales*, 168 F.3d 548, 553 (1st Cir. 1999).

This Court's precedential decision in *Brehm* controls this case and forecloses Bello's due process challenge. Brehm was a South African citizen who worked for a United States company at the NATO-operated Kandahar Airfield in Afghanistan. *Brehm*, 691 F.3d at 549. Brehm stabbed a British citizen on the base; he ultimately pleaded guilty in the Eastern District of Virginia to assault resulting in serious bodily injury. *Id.* at 549–50. On appeal, this Court rejected Brehm's due process challenge, notwithstanding that he "did not target his conduct toward American soil or American commerce." *Id.* at 552–54.

First, although neither Brehm nor his victim were Americans, this Court held that Brehm's "actions affected significant American interests" and that, as a result, "the imposition of American criminal law there [wa]s not arbitrary." *Brehm*, 691 F.3d at 552–53. In particular, this Court noted that Brehm's crime implicated the United States' interests in "the preservation of law and order on the base, the maintenance of military-related discipline, and the reallocation of [government] resources to confine Brehm, provide care for [his victim], and investigate the incident." *Ibid.* The Court also noted that Brehm was only allowed on the base pursuant to official United States

---

[4] The D.C. Circuit "has yet to decide whether the Constitution limits the extraterritorial exercise of federal criminal jurisdiction." *Ballestas*, 795 F.3d at 148 (internal quotation marks omitted).

authorization and that the Afghan government had authorized the United States to "exercise its criminal jurisdiction over the personnel of the United States," which this Court interpreted to include noncitizen employees of United States companies. *Id.* at 553 (internal quotation marks omitted); *see also ibid.* (noting that absent a United States prosecution, Brehm's conduct may have gone unpunished).

Second, this Court held that Brehm's prosecution was fair and noted, "[i]n that regard," that the Second Circuit's decision in *United States v. Al Kassar*, 660 F.3d 108 (2d Cir. 2011), "is instructive." *Brehm*, 691 F.3d at 553. This Court adopted *Al Kassar*'s standard of fairness: "'Fair warning does not require that the defendants understand that they could be subject to criminal prosecution *in the United States* so long as they would reasonably understand that their conduct was criminal and would subject them to prosecution somewhere.'" *Id.* at 554 (quoting *Al Kassar*, 660 F.3d at 119). The Court then determined that "Brehm reasonably should have" understood that he would be prosecuted somewhere for stabbing his victim. *Ibid.* And this was "all the more so" true in light of his employment contract, which provided that he would be subject to United States civilian criminal law for crimes committed on the base. *Id.* at 549, 554.

*Brehm* therefore makes clear that due process is satisfied where the prosecution is (i) non-arbitrary, because the defendant's crime "affected significant American interests," and (ii) fair, because the defendant "'would reasonably understand that [his] conduct was criminal and would subject [him] to prosecution somewhere,'" even if the defendant did not "'understand that [he] could be subject to criminal prosecution *in the*

10

*United States.*'" *Brehm*, 691 F.3d at 552, 554 (quoting *Al Kassar*, 660 F.3d at 119); *see also United States v. Ali*, 718 F.3d 929, 946 (D.C. Cir. 2013) (quoting *Al Kassar*'s fairness standard, rejecting defendant's argument that "the Second Circuit cannot have meant what it said," and explaining that in light of other applicable presumptions in the law, *Al Kassar*'s fairness standard does not underprotect defendants). As the district court correctly held, JA 172–75, both parts of the *Brehm* test are satisfied here.

First, conspiring to kidnap, and murdering, a United States diplomatic attaché overseas plainly affect significant American interests. *See* JA 115 (Sepulveda, who filed and argued the due process motion that is now the subject of this appeal, conceding that "[c]ertainly the … United States government has an interest in protecting its citizens wherever they are. Certainly we're not contesting that."), 130 (Sepulveda "conced[ing]" that "the United States interest … in protecting its diplomats … is incredibly strong"), 172 (district court stating that "it is clear that [Bello's] crime affected the significant American interest of protecting United States citizens who serve their country by working abroad in diplomatic capacities").

Second, Bello's prosecution is fair because a defendant who conspires to kidnap, and then murders, a wealthy-looking stranger — crimes that are "'self-evidently criminal'" — should understand that he will likely face criminal prosecution "'somewhere.'" *Brehm*, 691 F.3d at 554 (quoting *Al Kassar*, 660 F.3d at 119); *see also* JA 117 (Sepulveda conceding that "[s]urely the crime of murder, unlike other crimes that might be crimes in one jurisdiction and not in others, is a crime anywhere"), 175 (district

11

court: "Here, it is undeniable that [Bello] reasonably understood that kidnapping and killing a person are criminal acts and would subject him to prosecution somewhere."). Indeed, Colombian law, like United States law, criminalizes murder, kidnapping, and criminal conspiracies. *See* Colombian Gov't Order of Extradition at 23 (noting that "the principle of double criminality" was satisfied as to the three counts on which the Colombian government allowed extradition).[5]

In *United States v. Feola*, 420 U.S. 671, 684–86 (1975), the Supreme Court held that the crime of assaulting a federal officer, in violation of 18 U.S.C. § 111, did not require proof of the defendant's knowledge that the victim was a federal officer. In language relevant here, the Court explained that its holding was not "unfair[]" because although a defendant "may be surprised to find that his intended victim is a federal officer in civilian apparel, he nonetheless knows from the very outset that his planned course of conduct is wrongful. The situation is not one where legitimate conduct becomes unlawful solely because of the identity of the individual … affected. In a case of this kind the offender takes his victim as he finds him. The concept of criminal intent does not extend so far as to require that the actor understand not only the nature of his act but also its consequence for the choice of a judicial forum." *Id.* at 685. This principle applies here. Bello, who repeatedly kidnapped and assaulted strangers to rob

---

[5] The principle of "double criminality" means that the offenses at issue are crimes in both the requesting state and the extraditing state. *See generally Matter of Extradition of Manzi*, 888 F.2d 204, 207 (1st Cir. 1989).

them, "takes his victim[s] as he finds [them]"; he cannot complain that his prosecution in the United States is unfair simply because he did not know in advance that his victim was a United States diplomatic agent.

Bello's prosecution was neither arbitrary nor unfair.  As *Brehm* makes clear, due process requires no more.

b.  Bello raises several arguments to the contrary.  None has merit.

i.  Bello contends (Br. 16–20) that *Brehm* supports his argument because Brehm had actual notice of potential prosecution in the United States (by virtue of his employment contract) and "de facto" notice because he worked for an American contractor "on a US military base."[6]  He also notes (Br. 17–18) that "Afghanistan had specifically ceded criminal jurisdiction" over the base to the United States.  But none of that matters here.  This Court concluded in *Brehm* that due process is satisfied where the prosecution is not arbitrary — because the crime "affected significant American interests" — and where it is fair — because the defendant should have reasonably understood that he would be prosecuted somewhere.  The specific facts at issue in *Brehm* satisfied those two legal requirements, but nothing about the decision suggests that only those facts will suffice.  And here, Bello's crimes affected significant American interests and were of such a violent nature, and were so "self-evidently criminal," that he should have reasonably expected to be prosecuted "somewhere."

---

[6] Although there was a substantial United States military presence there, Kandahar Airfield "is a NATO-operated military base."  *Brehm*, 691 F.3d at 549.

13

Bello also argues (Br. 19–20) that *Brehm*'s articulation of the fairness standard, which it adopted from *Al Kassar*, is nonbinding dicta. He is wrong. *Brehm* set forth a two-part test — that the prosecution be nonarbitrary and fair — both parts of which must be satisfied. Far from constituting dicta, the Court's fairness discussion — including the legal standard by which the fairness of the prosecution should be measured — was an essential part of its ultimate holding that Brehm's prosecution comported with due process. *See United States v. Hamidullin*, ___ F. Supp. 3d ____, 2015 WL 4241397, at *18 (E.D. Va. 2015) (noting that *Brehm* "adopted" the fair notice standard set out in *Al Kassar*); *United States v. Carvajal*, 924 F. Supp. 2d 219, 261–62 (D.D.C. 2013) (describing *Brehm*'s fairness discussion as a holding).

ii. Bello asserts more generally (Br. 13–16) that his prosecution in the United States violates due process because he did not know that Special Agent Watson was a United States citizen or worked as a United States diplomat and because he did not expect his crime to harm any United States interest. For support, he cites decisions rejecting due process challenges when the defendants intended to harm the United States or at least expected that their crime would harm the United States. *See* Br. 13–14, 16 (citing, *e.g.*, *United States v. Yousef*, 327 F.3d 56, 111–12 (2d Cir. 2003) (conspiracy to attack United States aircraft); *Al Kassar*, 660 F.3d at 117–19 (conspiracy to sell weapons understanding that they would be used to harm United States citizens and property); *United States v. Mohammad-Omar*, 323 Fed. Appx. 259, 262 (4th Cir. 2009) (per curiam) (unpublished) (conspiracy to distribute drugs known to be destined for the

14

United States)). But Bello's argument, and the cases on which he relies, involve that which is *sufficient* to show that the extraterritorial application of a federal criminal statute satisfies due process; they do not address what else may suffice, or what is necessary. *See, e.g.*, *Ali*, 718 F.3d at 945–46 (noting *Al Kassar*'s statement that for noncitizens "acting entirely abroad, a jurisdictional nexus exists when the aim of that activity is to cause harm inside the United States or to U.S. citizens or interests," and explaining that at most the Second Circuit's "decision only tells us when such a nexus *exists*, not when it is absent"); *United States v. Yousef*, 2010 WL 3377499, at *4 (S.D.N.Y. Aug. 23, 2010) (unpublished) ("*Yousef*['s] … finding of a 'substantial intended effect' in or on the United States is sufficient but not necessary to justify the extraterritorial application of federal criminal law."); *see also Al Kassar*, 660 F.3d at 118 (jurisdictional nexus exists if the criminal activity "targets U.S. citizens or interests *or* threatens the security or government functions of the United States") (emphasis added).

iii. In an effort to bolster his position that due process requires notice of possible future prosecution in the United States, Bello invokes cases involving the due process requirement for personal jurisdiction in the civil context. *See* Br. 11–12 (citing *Asahi Metal Indus. v. Superior Court of Cal.*, 480 U.S. 102 (1987); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980); and *Int'l Shoe v. Washington*, 326 U.S. 310 (1945)). But although "courts have periodically borrowed the language of personal jurisdiction in discussing the due process constraints on extraterritoriality, … the law of personal jurisdiction is simply inapposite." *Ali*, 718 F.3d at 944; *see also United States v. Perez-*

15

*Oviedo*, 281 F.3d 400, 403 (3d Cir. 2002) (explaining that "cases such as *International Shoe* … and *Asahi Metal*, which deal with non-resident corporations subject to liability for placing goods in the stream of commerce of another state, are inapposite"). Indeed, *Brehm* rejected the defendant's due process challenge without addressing these civil cases, even though Brehm relied on them.

iv. Quoting the Ninth Circuit's decision in *United States v. Davis*, 905 F.2d 245, 248–49 (9th Cir. 1990), Bello argues (Br. 12–13) that the proper due process test is whether there is a "'sufficient nexus between the defendant and the United States, so that such application [of a federal criminal statute] would not be arbitrary or fundamentally unfair.'" (internal citation omitted). *See also Mohammad-Omar*, 323 Fed. Appx. at 261 (quoting *Yousef*, 327 F.3d at 111 (quoting *Davis*, 905 F.2d at 248–49)). He further contends (Br. 15) that the nexus test can be satisfied only by proof that the defendant had "*de facto* notice … of his susceptibility to American process as inferred from his conduct." But as explained above, *Brehm* makes clear that due process is satisfied where the crime affected significant United States interests and where the defendant should have reasonably expected prosecution "somewhere," even if the defendant did not expect prosecution here. *See supra* at 9–11; *see also Brehm*, 691 F.3d at 552 & n.7 (articulating the nexus test, citing *Davis* and *Yousef*, and stating that "[a]lthough we find the analyses of those courts instructive, we need not decide, in this case, whether a showing of sufficient nexus is either adequate or required to satisfy due process in the

16

prosecution of a foreign national in U.S. courts").[7]  Indeed, not even the Ninth Circuit believes that the nexus test is the only way to analyze the due process question.  *See, e.g., United States v. Caicedo*, 47 F.3d 370, 371–72 (9th Cir. 1995) (declining to apply nexus test to prosecution of drug smugglers on flagless vessels, concluding instead that because the prosecution was permissible under international law absent any nexus, due process did not require a nexus).[8]

In any event, even the Ninth Circuit's nexus test would be satisfied here.  The nexus analysis does not require advance notice of possible prosecution in the United States; rather, a sufficient nexus exists when, for example, the crime had "some detrimental effect within … the United States."  *United States v. Perlaza*, 439 F.3d 1149, 1169 (9th Cir. 2006);[9] *see also, e.g., Caicedo*, 47 F.3d at 372 (nexus satisfied if "there is a

---

[7] Quoting *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1257 (9th Cir. 1998), this Court stated in *Mohammad-Omar* that "'[t]he nexus requirement serves the same purpose as the minimum contacts test in personal jurisdiction.  It ensures that a United States court will assert jurisdiction only over a defendant who should reasonably anticipate being haled into court in this country.'" 323 Fed. Appx. at 261.  To the extent *Brehm* and *Mohammad-Omar* conflict, *Brehm* controls because it, unlike *Mohammad-Omar*, was a published decision.  *See, e.g., Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 417 (4th Cir. 2014); *see also* JA 172 (district court applying *Brehm* because it is "a published and more recent opinion, while *Mohammad-Omar* is an unpublished and less-recent opinion").  Indeed, *Brehm* rejected the defendant's due process challenge without citing *Mohammad-Omar*.

[8] We discuss international law principles *infra* at 21–25.

[9] In *Perlaza*, 439 F.3d at 1168–69, the Ninth Circuit vacated convictions for lack of a sufficient nexus, but there, unlike here, "there was no allegation of harm to U.S. persons or interests."  *United States v. Mostafa*, 965 F. Supp. 2d 451, 460 (S.D.N.Y. 2013) (discussing *Perlaza*).

connection between the criminal conduct and the United States sufficient to justify the United States' pursuit of its interests"); *Yousef*, 327 F.3d at 112 (nexus satisfied because "the defendants' conduct was [not] so unrelated to American interests as to render their prosecution in the United States arbitrary or fundamentally unfair"). Bello's crimes obviously had such an effect.

And if due process required that it be foreseeable to Bello that his crimes would affect the United States, even that standard would be satisfied here: one of Bello's prior victims was a United States citizen, and he heard Special Agent Watson shout "No!" during the attack in what Bello believed was an American accent. *See* JA 194, 197. The facts agreed to by the parties in Bello's plea agreement and its incorporated Statement of Facts therefore establish that he could have foreseen an effect on the United States; accordingly, his challenge to the indictment on due process grounds fails even under the test that Bello himself proposes.

v. Bello correctly notes (Br. 21–24) that the government (JA 73) and the district court (JA 174) erred in stating that he was extradited pursuant to the United States-Colombia extradition treaty. Instead, Colombia, applying its domestic law, extradited him pursuant to the Convention on the Prevention and Punishment of Crimes against Internationally Protected Persons, including Diplomatic Agents (in force Feb. 20, 1977) (IPP Convention), to which both the United States and Colombia are signatories. *See* Colombian Gov't Order of Extradition at 22.

18

As an initial matter, this issue relates to a point — whether Bello had notice of possible extradition to, and prosecution in, the United States — that *Brehm* makes clear does not matter. But even if it did, Bello's argument would not entitle him to relief.

The IPP Convention defines an IPP to include "any representative or official of a State … who, at the time when and in the place where a crime against him … is committed, is entitled pursuant to international law to special protection from any attack on his person." Add. 71.[10] As relevant here, the IPP Convention provides that each signatory State "shall" criminalize "murder, kidnapping or other attack upon the person or liberty of an [IPP]" and "shall … establish its jurisdiction" over such crimes "when the crime is committed against an [IPP]." Add. 71. The Convention states that, in appropriate circumstances, "the State Party in whose territory the alleged offender is present shall take the appropriate measures under its internal law so as to ensure his presence for the purpose of prosecution or extradition" and that the IPP Convention itself can serve as "the legal basis for extradition." Add. 72–73. The Convention further provides that "[e]ach of the [enumerated] crimes shall be treated, for the purpose of extradition, … as if it had been committed not only in the place in which it occurred but also in the territories of the States required to establish their jurisdiction in accordance with" the Convention. Add. 73; *see also* Colombian Gov't Order of

---

[10] Colombia did not approve extradition on Count 2, charging murder of a United States officer or employee, because one's status as an officer or employee does not fall within the scope of the IPP Convention. *See* Colombian Gov't Order of Extradition at 10–11.

Extradition at 28 (explaining that Bello's crimes are deemed to have been committed in both Colombia and the United States).  Given these provisions, whatever relevance a defendant's knowledge of potential extradition has to the due process inquiry, it surely suffices that Bello was on notice that he could be extradited pursuant to the IPP Convention.  *See generally, e.g.*, *Ali*, 718 F.3d at 944 (applicable treaty "provide[d] global notice that certain generally condemned acts are subject to prosecution by any party to the treaty"); *United States v. Shi*, 525 F.3d 709, 723 (9th Cir. 2008) (applicable international convention "provides foreign offenders with notice that their conduct will be prosecuted by any state signatory").

Bello resists this conclusion by arguing (Br. 22–23) that the IPP Convention applies only when the defendant specifically targeted an IPP because he was an IPP. This is incorrect.  By its plain text, the Convention applies so long as the crime was intentional and the victim was an IPP.  *See, e.g.*, Add. 71 (requiring signatories to criminalize "[t]he intentional commission of: a murder, kidnapping or other attack upon the person or liberty of an [IPP]"); *ibid.* (obligating signatories to "establish [their] jurisdiction … when the crime is committed against an [IPP]"); *id.* at 72 (providing for signatories to share information when the crime "has been committed against an [IPP]").  Indeed, this is precisely how Colombia interpreted the Convention when it determined that extradition was proper even though the indictment did not allege that Bello victimized Special Agent Watson because he was an IPP.  *See, e.g.*, Colombian Gov't Order of Extradition at 28 (extradition appropriate "since [Special Agent Watson]

20

was an [IPP]"), 29 (IPP Convention applied "even though the homicide of [Special Agent Watson] was not carried out because of his diplomatic role").

*    *    *

The fundamental due process inquiry is whether the extraterritorial application of a federal criminal statute is nonarbitrary and fair. This prosecution comfortably satisfies that standard.

### 2.    *Bello's prosecution comports with international law.*

In *Brehm*, this Court rejected the defendant's due process challenge without relying on principles of international law.[11] Bello nevertheless suggests (Br. 20 & n.9) that his prosecution here is invalid because it is not authorized by international law. He is wrong. As explained below, international law confirms that which *Brehm* already makes clear: Bello's prosecution satisfies due process.

a. "International law permits the exercise of criminal jurisdiction by a nation under five general principles." *United States v. Alomia-Riascos*, 825 F.2d 769, 771 (4th Cir. 1987). As relevant here, the "protective principle" "'permits a nation to assert subject matter criminal jurisdiction over a person whose conduct outside the nation's territory threatens the national interest.'" *United States v. Ayesh*, 702 F.3d 162, 166 (4th Cir. 2012)

---

[11] The Court did note, though, in holding that application of the Military Extraterritorial Jurisdiction Act was constitutional as applied to Brehm, that "[t]he proposition that federal crimes are punishable though committed outside of the United States is not controversial, at least insofar as such prosecution is consistent with the law of nations and so long the enactment evidences Congress's intent to extend its extraterritorial reach." *Brehm*, 691 F.3d at 551 n.5.

21

(quoting *Alomia-Riascos*, 825 F.2d at 771). This principle "determines jurisdiction by reference to the national interest injured by the offense." *United States v. Birch*, 470 F.2d 808, 811 (4th Cir. 1972) (internal quotation marks omitted); *see also, e.g.*, *United States v. Gonzalez*, 776 F.2d 931, 938 (11th Cir. 1985) (protective principle "permits a nation to assert jurisdiction over a person whose conduct outside the nation's territory threatens the nation's security or could potentially interfere with the operation of its governmental functions"); *Cardales*, 168 F.3d at 553.

"'The protective principle does not require that there be proof of an actual or intended effect inside the United States. The conduct may be forbidden if it has a potentially adverse effect and is generally recognized as a crime by nations that have reasonably developed legal systems.'" *United States v. Garcia*, 182 Fed. Appx. 873, 876 (11th Cir. May 16, 2006) (unpublished) (quoting *Gonzalez*, 776 F.2d at 939); *see also United States v. Pizzarusso*, 388 F.2d 8, 10 (2d Cir. 1968) (protective principle applies to crimes that are "generally recognized … under the law of states that have reasonably developed legal systems") (internal quotation marks omitted).[12]

---

[12] The Restatement (Third) of Foreign Relations Law § 402(3) & cmt. f describe the protective principle as covering conduct "that is directed against" the State. But the Restatement also explains that under the "territorial" principle, extraterritorial jurisdiction comports with international law when the overseas crime "has or is intended to have substantial effect within" the territory of the prosecuting State. *Id.* § 402(1)(c) & cmt. a, d. However it is labeled, jurisdiction in this case comports with international law.

"[C]ompliance with the 'protective principle' … is sufficient to meet the requirements of due process because a statute that so complies is not arbitrary or fundamentally unfair." *United States v. Tinoco*, 304 F.3d 1088, 1110 n.21 (11th Cir. 2002); *see also, e.g.*, *Cardales*, 168 F.3d at 553 ("In determining whether due process is satisfied, we are guided by principles of international law."); *United States v. Peterson*, 812 F.2d 486, 493 (9th Cir. 1987) (Kennedy, J.) (rejecting due process challenge because the conduct was aimed at harming United States interests and, "[f]urther," because the protective principle applied). *Cf. Davis*, 905 F.2d at 249 n.2 ("[i]nternational law principles may be useful as a rough guide" in determining whether a prosecution violates due process).[13]

Bello's crimes — conspiring to kidnap, and murdering, a United States Assistant Attaché overseas — plainly threaten consequential United States interests and interfere with United States governmental operations. The protective principle therefore applies and authorizes Bello's prosecution in the United States. *See, e.g.*, *United States v. Vasquez-Velasco*, 15 F.3d 833, 840–41 (9th Cir. 1994) (drug cartel members' retaliatory murder in Mexico of United States citizens thought to be DEA agents); *United States v. Benitez*, 741 F.2d 1312, 1316–17 (11th Cir. 1984) (attempted murder and other crimes against DEA agents overseas).

Moreover, prosecuting Bello in the United States is consistent with the protective principle because the prosecution is "[]reasonable." Restatement (Third) of Foreign

---

[13] But noncompliance with international law does not necessarily mean noncompliance with due process. *See United States v. Howard-Arias*, 679 F.2d 363, 371–72 (4th Cir. 1982).

Relations Law § 403 (State may exercise jurisdiction pursuant to principles of international law only if the exercise of such jurisdiction is reasonable). Section 403 offers eight non-exhaustive, non-hierarchical factors that bear on the reasonableness inquiry. Restatement § 403 & cmt. b. Several of those factors are satisfied here, including, among others: Bello's crime had a "substantial, direct, and foreseeable effect" on the United States, *id.* § 403(2)(a); there are obviously strong "connections" between the United States and Special Agent Watson, *i.e.*, a person "whom the regulation is designed to protect," *id.* § 403(2)(b); prosecuting Bello for his crimes is "importan[t]" to the United States, *id.* § 403(2)(c); Bello's prosecution "protect[s]" a "justified expectation[]" that the United States will prosecute those who murder its overseas diplomats and does not "hurt" any "justified expectations" on the part of Bello or the nation of Colombia, *id.* § 403(2)(d); prosecuting Bello in the United States "is consistent with the traditions of the international system," *id.* § 403(2)(f), including the IPP Convention; and in light of Colombia's decision to extradite Bello, his prosecution here presents no "likelihood of conflict with regulation by another state," *id.* § 403(2)(h). Bello's prosecution is also reasonable because Colombia "consented to the United States taking jurisdiction and nothing suggests that [Colombia] objected in any way to [Bello's] extradition and trial under U.S. law." *United States v. Clark*, 435 F.3d 1100, 1107 (9th Cir. 2006) (extraterritorial application of 18 U.S.C. § 2423(c) reasonable under Section 403).

b.   Bello contends (Br. 20 n.9) that his prosecution does not conform with international law because international law does not "allow[] for the projection abroad of criminal jurisdiction based on nothing more than the illegality of an act under the laws of a particular nation."  What he means by this argument is not entirely clear to us. But what is clear is that Special Agent Watson's status as a United States Assistant Attaché has consequences for Bello under international law: it makes him subject to the criminal jurisdiction of the United States courts.

## II.   Bello's Argument That 18 U.S.C. § 1116(a) And 18 U.S.C. § 1201(a)(4) Require Proof Of Knowledge That Special Agent Watson Was An Internationally Protected Person Is Barred By The Appeal Waiver And Lacks Merit In Any Event.

Bello argues (Br. 8–11) that 18 U.S.C. § 1116(a) and 18 U.S.C. § 1201(a)(4) require proof of knowledge that Special Agent Watson was an IPP.  His argument is barred by the appeal waiver provision in his plea agreement and is, in any event and as the district court held, unavailing on the merits.

### A.      Standard of Review

This Court "review[s] the validity and effect of an appellate waiver de novo." *United States v. Thornsbury*, 670 F.3d 532, 537 (4th Cir. 2012).  This Court reviews questions of statutory interpretation de novo.  *United States v. Ide*, 624 F.3d 666, 668 (4th Cir. 2010).

B.    The appeal waiver bars Bello's statutory interpretation argument.

Before Bello pleaded guilty, the district court granted his motion to join a codefendant's motion, filed at Docket Number 120, arguing that Sections 1116 and 1201 require proof of the defendants' knowledge that their victim was an IPP. *See* JA 109A, 175A; *see also* Sepulveda Mot. for an Advance Ruling on Jury Instruction Defining the Mens Rea Applicable to Counts One, Three, and Four (Doc. No. 120). The district court denied the motion on the merits. *United States v. Sepulveda*, 57 F. Supp. 3d 610 (E.D. Va. 2014). Bello subsequently entered his conditional guilty plea.

In his plea agreement, Bello waived his right to appeal his convictions, except that he "reserve[d] the right to appeal the [district court's] adverse determination concerning [his] Motion to Dismiss for Violation of the Notice Requirement of the Fifth Amendment Due Process Clause (Docket No. 119)." JA 181–82. The district court's constitutional due process decision, which resolved the motion at issue in Docket Number 119, *see* JA 167–75, did not address the statutory mens rea issue, which was raised in the motion filed at Docket Number 120. *See* JA 132 (Sepulveda stating that the statutory interpretation issue was "in some ways related to the" due process issue but then clarifying that the issues are "distinct" because the former "has to do with the scope of the statu[t]e, or the ambit of the criminal statute … as opposed to whether due process is satisfied").

"A defendant may waive the right to appeal his conviction and sentence so long as the waiver is knowing and voluntary." *United States v. Copeland*, 707 F.3d 522, 528

26

(4th Cir. 2013) (internal quotation marks omitted). "Generally, if a district court questions a defendant regarding the waiver of appellate rights during the Rule 11 colloquy and the record indicates that the defendant understood the full significance of the waiver, the waiver is valid." *Ibid.* (internal quotation marks omitted). And this Court will generally enforce a valid waiver as to issues within its scope. *Ibid.*; *see also, e.g.*, *United States v. Archie*, 771 F.3d 217, 221–23 (4th Cir. 2014) (appeal waiver barred argument that sentence was improper under subsequently decided decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013)). Applying these principles, Bello's waiver is valid and bars his statutory interpretation argument.

First, Bello knowingly and voluntarily agreed to the appeal waiver. At the Rule 11 hearing, he confirmed that the decision to plead guilty was his, that no one threatened or forced him to plead guilty, that he pleaded guilty "freely and voluntarily," and that he was satisfied with his counsel's work. Rule 11 Tr. 5–6 (Doc. No. 357); *see also id.* at 28. The court specifically addressed the appeal waiver provision and the reservation of rights and confirmed with Bello that he understood both provisions. *Id.* at 14–16. Bello's plea agreement further confirms that he agreed to the waiver knowingly and voluntarily. *See, e.g.*, JA 181 ("The defendant knowingly waives the right to appeal his conviction, subject to the exception set forth in paragraph 7," *i.e.*, the reservation of rights as to the due process argument.), *ibid.* ("[T]he defendant knowingly waives the right to appeal the conviction and any sentence within the statutory maximum … ."), 190 (Bello and his counsel "acknowledge that no threats, promises,

27

or representations have been made, nor agreements reached, other than those set forth in writing in this plea agreement, to cause the defendant to plead guilty"), 191 (Bello certifying: "I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending criminal indictment. … I have read this plea agreement and carefully reviewed every part of it with my attorney.  I understand this agreement and voluntarily agree to it."), *ibid.* (Bello's counsel signing a similar certification).

Second, Bello's statutory interpretation argument falls within the scope of the waiver.  The waiver preserved his right to appeal only the due process decision denying the due process motion at issue in Docket Number 119.  The statutory interpretation motion — Docket Number 120 — was a different motion that presented a different legal question that was denied for different legal reasons.  Bello's statutory argument is therefore barred, and this Court should dismiss this part of Bello's appeal.

C.    <u>In any event, Bello's argument fails on the merits because the government was not required to prove his knowledge of the jurisdictional element that his victim was an IPP.</u>

Bello pleaded guilty to violating 18 U.S.C. § 1116(a) and 18 U.S.C. § 1201(c).  JA 199.  Section 1116(a) provides that "[w]hoever kills [an] … [IPP] shall be punished as provided under" 18 U.S.C. §§ 1111, 1112, and 1113.  Section 1201(a) and (c) make it a crime to conspire to "unlawfully … kidnap[] … any person … when … the person is … an [IPP]."

28

Starting with the plain text, *see, e.g. United States v. Passaro*, 577 F.3d 207, 213 (4th Cir. 2009), it is clear that, as the district court concluded, neither statute "require[s] a defendant to know that [he is] committing the offenses defined therein against an [IPP]," *Sepulveda*, 57 F. Supp. 3d at 613. Rather, the victim's status as an IPP is a "jurisdictional element" because it "states the basis of Congress' power to regulate the conduct at issue: its 'primary purpose is to identify the factor that makes the conduct an appropriate subject for federal concern.'" *United States v. Cooper*, 482 F.3d 658, 664 (4th Cir. 2007) (construing provision of the Clean Water Act) (internal brackets omitted) (quoting *United States v. Yermian*, 468 U.S. 63, 68 (1984)). In other words, the victim's status as an IPP is what brings the murder or kidnapping within the scope of federal jurisdiction. *See Sepulveda*, 57 F. Supp. 3d at 614 (referring to the victim's status as a "jurisdictional hook"). Indeed, this Court has already concluded that subsections (1)–(4) of Section 1201(a) "constitute separate federal jurisdictional bases for th[e] single crime" of kidnapping. *United States v. Lewis*, 662 F.2d 1087, 1089–90 & n.2 (4th Cir. 1981); *see also* Wayne R. LaFave, 3 Substantive Criminal Law § 18.2(a) (2d ed. 2003) (Section 1201(a)(4)'s reference to IPPs is one of the "statutorily-declared bases for federal jurisdiction under the kidnapping statute").

"It is well settled that mens rea requirements typically do not extend to the jurisdictional elements of a crime — that 'the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute.'" *Cooper*, 482 F.3d at 664 (quoting *United States v.*

29

*Feola*, 420 U.S. 671, 677 n.9 (1975)); *see also, e.g.*, *Yermian*, 468 U.S. at 74–75 (making false statement in any matter within jurisdiction of a federal agency, in violation of 18 U.S.C. § 1001, does not require government to prove defendant's knowledge of federal agency jurisdiction); *Feola*, 420 U.S. at 684–85 (assault of federal officer, in violation of 18 U.S.C. § 111, does not require government to prove defendant's knowledge that victim was a federal officer); *Cooper*, 482 F.3d at 664–68 (knowingly discharging pollutant without a permit into "waters of the United States" does not require government to prove defendant's knowledge that the discharge was into United States waters); *United States v. Langley*, 62 F.3d 602, 605–06 (4th Cir. 1995) (en banc) (felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), does not require government to prove defendant's knowledge of the firearm's interstate nexus). *Accord Cooper*, 482 F.3d at 664–65 (citing cases).

"Congress legislates against this well-established backdrop, aware that jurisdictional elements generally assert federal jurisdiction but do not create additional statutory elements as to which defendants must have formed the appropriate mens rea in order to have broken the law." *Cooper*, 482 F.3d at 665. And when "Congress mean[s] to overcome the customary understanding that mens rea requirements do not attach to jurisdictional elements," courts fairly expect that Congress will clearly say as much. *Id.* at 666. That Congress offered no such indication in Sections 1116 or 1201 demonstrates that Congress never intended the mens rea to extend to the jurisdictional element. *See, e.g.*, *Sepulveda*, 57 F. Supp. 3d at 615 (quoting 2–41 Modern Federal Jury

30

Instructions — Criminal at 41.04 (Section 1116(a) does not require proof of knowledge as to the victim's status)).[14]

Furthermore, the legislative history of the statutes confirms that no mens rea extends to the victim's status. When Congress enacted the statutory language in 1972 to cover foreign officials and official guests, Congress considered the victim's status to be a jurisdictional element only and made clear that the government was not required to prove knowledge of the victim's status. *See Sepulveda*, 57 F. Supp. 3d at 616 (explaining legislative history); *see also, e.g.*, S. Rep. No. 92–1105, at 4317 (1972) (noting that "the Federal Government is currently without a criminal jurisdictional nexus over" crimes against foreign officials and official guests in the United States). For instance, a Senate Report on Section 1116 explained that under subsection (a), "[a]lthough the Government must indicate the status of the victim in prosecutions brought under this section for the purpose of establishing a jurisdictional basis, knowledge of the victim's status on the part of his assailant is not an element of the offense which must be established at trial if the person is indeed a foreign official." S. Rep. 92–1105, at 4325; *see also id.* at 4326.

When Congress implemented the IPP Convention and an unrelated terrorism convention in 1976 by amending the statutes to add protections for IPPs, *see, e.g.*, *Sepulveda*, 57 F. Supp. 3d at 616; *United States v. Layton*, 509 F. Supp. 212, 221–22 (N.D.

---

[14] Nor is there anything unfair about not applying a mens rea requirement to the jurisdictional element. *See Feola*, 420 U.S. at 685.

31

Cal. 1981), Congress' intent was to supplement the statutes' already-existing jurisdictional bases, *see, e.g.*, H.R. Rep. 94-1614, at 4483 (1976) ("Section 2 of the bill amends [Section 1116(a)], which presently provides criminal penalties for the murder of foreign officials and official guests. The legislation amends that section to include [IPPs] in accordance with the Conventions."); *ibid.* ("Section 4 of the bill amends [Section 1201] to provide criminal penalties if the victim is an [IPP.]"). Congress did not intend also to attach a new mens rea requirement to the jurisdictional element. And Congress intended no different meaning when, in 1996, it amended the statutes to make them applicable extraterritorially when the victim is a United States IPP outside the United States. *See Sepulveda*, 57 F. Supp. 3d at 617; *see also, e.g.*, H.R. Rep. 104-383, at *6 (1995) (explaining amendment to Section 1116(c)), *7 (explaining amendment to Section 1201(e)).

Moreover, not requiring mens rea as to the jurisdictional element better promotes the statutes' aim of affording heightened protection to diplomats, foreign officials, and IPPs. *See, e.g.*, *Feola*, 420 U.S. at 684 ("[I]n order to effectuate the congressional purpose of according maximum protection to federal officers by making prosecution for assaults upon them cognizable in the federal courts, [Section] 111 cannot be construed as embodying an unexpressed requirement that an assailant be aware that his victim is a federal officer."); *Cooper*, 482 F.3d at 666 ("Just as Congress in 18 U.S.C. § 111 intended to accord maximum protection to federal officers, so Congress in the [Clean Water Act] clearly intended to provide strong protection to the nation's

32

water-ways.  To attach a mens rea to the jurisdictional element would as surely undermine Congress' intent here as it would have in *Feola*." (internal punctuation omitted)).

b.  Bello's arguments are unpersuasive.  First, Bello argues (Br. 9–10 & n.5) that because Congress enacted the statutes to combat terrorism, and because terrorism usually connotes a "deliberate choice of a target," this Court should construe the statutes to require proof of knowledge of the victim's status.  But as set forth above, Bello's argument is foreclosed both by the plain text of the statutes and by the legislative history itself, including perhaps most emphatically Congress's assertion in enacting the statutes in 1972 that it intended no mens rea requirement as to the jurisdictional element.  And although the 1972 statute covered only foreign officials and official guests, we can think of no reason, and Bello does not offer a reason, why Section 1116(a) could plausibly be read not to require proof of knowledge of the victim's status if the victim is a "foreign official" or "official guest" but to require such proof if the victim is an IPP.  *See* 18 U.S.C. 1116(a) ("Whoever kills or attempts to kill a foreign official, official guest, or [IPP] shall be punished as provided under" 18 U.S.C. §§ 1111, 1112, and 1113.).  Nor is it unusual for Congress to enact a statute that reaches more broadly than the specific concern underlying it.  *See, e.g.*, *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998) ("[S]tatutory prohibitions often go beyond the principal evil [identified by Congress] to cover reasonably comparable evils, and it is ultimately the

provisions of our laws rather than the principal concerns of our legislators by which we are governed.").[15]

Second, Bello's reliance (Br. 8–9) on the Supreme Court's decision in *Staples v. United States*, 511 U.S. 600 (1994), is misplaced. *Staples* held that to secure a conviction under 26 U.S.C. § 5861(d) for unlawful possession of an unregistered firearm, the government was required to prove the defendant's knowledge that his weapon fell within the scope of the statute. *Id.* at 602, 619. The Court adopted this reading, which was consistent with the background common law rule requiring "some *mens rea* for a crime," over a reading that would have imposed no mens rea requirement at all. *Id.* at 605–06.

*Staples*'s statement that "offenses that require no *mens rea* generally are disfavored," 511 U.S. at 606, does not help Bello (Br. 8) because second-degree murder under Section 1116 and kidnapping under Section 1201 require proof of mens rea with respect to the commission of the unlawful acts. *See, e.g.*, *United States v. Ashford*, 718 F.3d 377, 384 (4th Cir. 2013) (second-degree murder); *United States v. Sandoval*, 347 F.3d 627, 633 (7th Cir. 2003) (kidnapping); *see also Chatwin v. United States*, 326 U.S. 455, 460 (1946) ("The act of holding a kidnapped person for a proscribed purpose necessarily implies

---

[15] Bello states (Br. 11) that this is the first case in which Sections 1116(a) and 1201(a)(4) have been applied "to a street crime." This is immaterial. Bello's prosecution falls well within the heartland of what those statutes criminalize. And Special Agent Watson's status as an IPP converted Bello's "street crime" into a crime having international implications.

an unlawful physical or mental restraint … with a willful intent so to confine the victim."). Bello's other *Staples* argument fares no better. He contends (Br. 9) that his lack of knowledge that his victim was an IPP is the same as the *Staples* defendant's failure to know that his weapon was covered by the statute. But the two are not comparable because, as the district court below properly explained, "*Staples* did not involve the application of a 'knowingly' requirement to a jurisdictional hook, which is precisely what [Bello] is seeking here." *Sepulveda*, 57 F. Supp. 3d at 614. Indeed, *Staples* itself makes clear that it does not reach as broadly as Bello wishes; the Court there did not disturb its prior decision holding that the relevant statute "does not require proof of knowledge that a firearm is *unregistered*." *Staples*, 511 U.S. at 609 (discussing *United States v. Freed*, 401 U.S. 601 (1971)); *see also ibid.* ("[D]ifferent elements of the same offense can require different mental states."); *Yermian*, 468 U.S. at 68 ("Jurisdictional language need not contain the same culpability requirement as other elements of the offense.").

Finally, the Court in *Staples* was cautious "to avoid construing a statute to dispense with *mens rea* where doing so would criminalize a broad range of apparently innocent conduct" and to respect the "long tradition of widespread lawful gun ownership by private individuals." 511 U.S. at 610; *see also id.* at 614–15. As to Bello's violent crimes — which are obviously crimes regardless of the victim's status — neither of these animating *Staples* concerns apply.

35

## CONCLUSION

This Court should affirm the judgment of the district court in part and dismiss Bello's appeal in part. Alternatively, this Court should affirm the judgment of the district court in full.

Respectfully submitted,

DANA J. BOENTE
United States Attorney
Eastern District of Virginia

RICHARD COOKE
Assistant United States Attorney
Eastern District of Virginia

STACEY K. LUCK
Human Rights & Special
   Prosecutions Section
U.S. Department of Justice

LESLIE R. CALDWELL
Assistant Attorney General

SUNG-HEE SUH
Deputy Assistant Attorney General

s/ ROSS B. GOLDMAN
ROSS B. GOLDMAN
Criminal Division, Appellate Section
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 532-4153
Ross.Goldman@usdoj.gov

October 13, 2015

## CERTIFICATE OF SERVICE

I, Ross Goldman, Attorney in the Appellate Section of the Criminal Division at the U.S. Department of Justice, hereby certify that on October 13, 2015, an electronic copy of this brief was served by notice of electronic filing via this Court's ECF system upon opposing counsel, John C. Kiyonaga.


s/ Ross B. Goldman


October 13, 2015

## STATEMENT REGARDING ORAL ARGUMENT

The United States does not oppose Bello's request for oral argument.

<u>s/ Ross B. Goldman</u>

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9225 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Garamond font, 14-point.

s/ Ross B. Goldman